

**SO ORDERED.**

**SIGNED this 16 day of October, 2009.**

_____
**JAMES D. WALKER, JR.**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | CASE NO. 09-51096-JDW |
| COACHWORKS HOLDINGS, INC., | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Movant:   Tanya Andrews Tate
              1325 Satellite Blvd., Suite 1603
              Suwanee, Georgia 30024

For Debtor:   Ward Stone
              577 Mulberry Street, Suite 800
              Macon, Georgia 31201

**MEMORANDUM OPINION**

This matter comes before the Court on Barry Ellerbee's motion for stay relief. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(G). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

On April 28, 2009, Movant Barry Ellerbee filed a complaint for violations of various employment laws[1] in the District Court for the Middle District of Georgia against Debtor Coachworks Holdings, Inc., DT Carson Enterprises, Inc., Dale Carson, and Terri Carson. When Mr. Ellerbee attempted to serve the complaint, he discovered that Debtor was the subject of an involuntary Chapter 7 bankruptcy case that had been filed on April 7, 2009.[2] Consequently, Mr. Ellerbee filed a motion for relief from the automatic stay for purposes of pursuing his nonbankruptcy claims. Debtor opposes the motion.

Mr. Ellerbee's complaint in the district court alleges the following facts: Mr. Ellerbee began working as a materials buyer and planner for Blue Bird Body, Inc. in May 2001. In 2006, he was diagnosed with liver failure and placed on a liver transplant list. Subsequently, Blue Bird

---

[1] The complaint alleged causes of action pursuant to the Americans With Disabilities Act, the Employee Retirement Income Security Act, the Family Medical Leave Act, the Fair Labor Standards Act, and Georgia laws for intentional infliction of emotional distress, piercing the corporate veil, ratification, wanton and reckless disregard for Mr. Ellerbee's legal rights, and punitive damages. Mr. Ellerbee has abandoned the claim for piercing the corporate veil as to Debtor.

[2] The case was converted to Chapter 11 on July 27, 2009, four days after Mr. Ellerbee filed the motion for stay relief at issue.

was purchased in part by DT Carson Enterprises, Inc., which formed Debtor Coachworks Holdings, Inc. to operate the business.[3] As a result, Debtor became an employee of DT Carson and Coachworks, which were joint employers, effective July 2007. In November and December 2007, Mr. Ellerbee took leave from Coachworks under the Family Medical Leave Act ("FMLA"). He returned to work in January 2008, sometimes working more than 40 hours per week. In April 2008, he was terminated for alleged "unsatisfactory work performance," even though Mr. Ellerbee had never received a negative performance evaluation. When Mr. Ellerbee inquired further, he was told the company listed poor performance as the reason for termination so he would be eligible for unemployment benefits. Mr. Ellerbee alleged the real reason for his termination was to prevent his condition from increasing Debtor's health care costs. Mr. Ellerbee's medical insurance terminated with his employment. He briefly obtained coverage through COBRA before being added to his wife's health insurance plan. Because of the change in insurance, Mr. Ellerbee was removed from the transplant list until he could obtain a confirmation of his diagnosis by doctors covered under the new plan. He ultimately received a liver transplant in August 2008.

At issue is whether Mr. Ellerbee should be permitted to pursue his claims against Debtor in district court. Debtor contends the claims should be resolved by the Bankruptcy Court on an objection to claim it intends to file at a later date. The Court held hearings on the motion for stay relief on August 25, 2009, and September 22, 2009. For the reasons that follow, the Court will grant stay relief to allow Mr. Ellerbee to proceed with his claims in district court. However, the

---

[3] Dale and Terri Carson, who are also named as defendants in Mr. Ellerbee's district court case, are the owners and officers of Debtor and DT Carson Enterprises.

relief will be limited to a determination of liability.

## Conclusions of Law

At the time of a bankruptcy filing, the automatic stay arises to prevent, among other things, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(1). The Court may provide relief from the stay "for cause[.]" Id. § 362(d)(1). The relief may consist of "terminating, annulling, modifying, or conditioning" the stay. Id. § 362(d). The movant must make an initial showing of cause. Sonnax Ind., Inc. v. Tri Component Prods. Corp. (In re Sonnax Ind., Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990). Upon such a showing, the burden shifts to the party opposing stay relief to prove all issues other than the extent of the debtor's equity in property. 11 U.S.C. § 362(g). Because equity is not at issue here, the burden falls solely on Debtor.

The Bankruptcy Code does not define "cause" for lifting the stay. However, it is well-established that the existence of pending litigation against the debtor in a nonbankruptcy forum may constitute cause. See Smith v. Tricare Rehab. Sys., Inc. (In re Tricare Rehab. Sys., Inc.), 181 B.R. 569, 572 n.7 (Bankr. N.D. Ala. 1994) (collecting cases). When deciding whether to grant stay relief in such circumstances, courts apply a balancing test that takes into account a variety of factors. This Court has previously focused on three factors: (1) the prejudice to the bankruptcy estate or debtor; (2) the hardship on the movant of denying stay relief versus the hardship on the debtor of granting stay relief; and (3) the movant's probability of success on the merits. In re South Oakes Furniture, Inc., 167 B.R. 307, 309 (Bankr. M.D. Ga. 1994) (Walker, J.). Other factors that may be relevant to the inquiry include:

> (1) whether relief would result in partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Sonnax Ind., 907 F.2d at 1286. See also Wiley v. Hartzler (In re Wiley), 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003) (setting forth a 5-factor test); In re Preferred Underwriting Alliance, Inc., 351 B.R. 174, 177 (Bankr. N.D. Ala. 2006) (setting forth a 10-factor test). Not all the factors will be relevant in every case, nor are they entitled to equal weight. See Sonnax Ind., 907 F.2d at 1286, 1288.

Debtor argues it will suffer great prejudice if the stay is lifted because it does not have the funds to defend itself in what is likely to be expensive litigation. Such expenses will ultimately be borne by other unsecured creditors because of the resulting diminishment in the estate. This is a needless burden when a more efficient and economical option is available for determining Debtor's liability to Mr. Ellerbee through the claims allowance process. Furthermore, because Mr. Ellerbee seeks different types of damages that are entitled to different priorities, the resolution of claims is more suited to the Bankruptcy Court. Debtor argues Mr. Ellerbee is not prejudiced because he could still proceed against the other defendants in district court. Finally,

5

Debtor also contends the proposed complaint fails to state any claim against Debtor that would survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), with the possible exception that Mr. Ellerbee might be entitled to damages for some overtime he worked without Debtor's knowledge or permission.

Debtor's argument as to prejudice–e.g., the expense of litigation–is somewhat negated by its argument that Debtor has failed to state a claim. If Debtor is correct that Mr. Ellerbee's complaint lacks substance, the district court can dispense with it efficiently, with respect to time, money, and other resources, on a Rule 12(b)(6) motion. Consequently, any prejudice to Debtor is minimal.

On the other hand, at least two factors weigh heavily in Mr. Ellerbee's favor: judicial economy and the existence of other defendants. Even assuming Mr. Ellerbee waived any right he has to a jury trial against Debtor due to his participation in the bankruptcy proceedings, he is entitled to a jury trial against the non-debtor defendants, who also retain jury trial rights. This point is particularly significant as it relates to DT Carson. Because DT Carson and Debtor were joint employers of Mr. Ellerbee, the cases against them are likely to revolve around similar–if not identical–issues and evidence. If the Court grants stay relief, Mr. Ellerbee will have to prosecute what amounts to the same case in two different forums, with the possibility of inconsistent results. "[P]rinciples of judicial economy require that, without good reason, judicial resources should not be spent by duplicitous litigation, and that a lawsuit should only be tried once, if one forum with jurisdiction over all parties involved is available to fully dispose of all issues relating to the lawsuit." Tricare Rehab. Sys., 181 B.R. at 574. See also In re Davis, 91 B.R. 470, 471 (Bankr. N.D. Ill. 1988) (The court granted stay relief to allow the lawsuit against the debtor to

6

proceed "principally because of the risks, if the stay is not lifted, of inconsistent results in two forums, of a conflict in the interpretation of state law between this court and the state court, and of duplication of lawyer and judicial effort.")

## Conclusion

After considering the factors relevant to granting stay relief in this case, including prejudice and burden to Debtor, the rights of non-debtor parties, and judicial economy, the Court will grant limited relief. Granting stay relief will not significantly prejudice Debtor. To the extent Mr. Ellerbee's complaint fails to state a claim, it can be resolved with a motion to dismiss without a substantial investment of time and money by Debtor. On the other hand, denial of stay relief would impose a heavy burden on Mr. Ellerbee by requiring him to litigate essentially identical causes of action in two separate forums. The duplicitous litigation would be contrary to notions of judicial economy and would create a risk of inconsistent results.

In these circumstances, the best option is to allow Mr. Ellerbee to move forward with his complaint against all defendants in one forum. Because the Bankruptcy Court has no jurisdiction over the non-debtor defendants, the district court is the forum in the best position to vindicate all the parties' rights–including their rights to a jury trial–in one proceeding. Therefore, the Court will grant stay relief for the purpose of establishing Debtor's liability, if any, to Mr. Ellerbee.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT